IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYAN RUSSELL ARNETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-1643-BN |
| | § | |
| C&S DELIVERY SERVICES LLC, | § | |
| CORONA THREATS, and LARRY | § | |
| TYRONE FAIRELL, II, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants C&S Delivery Services, LLC, Corona Threats, and Larry Tyrone Fairell, II have filed a motion for partial summary judgment. *See* Dkt. No. 29.

Plaintiff Bryan Russell Arnett filed a response, *see* Dkt. No. 50, and Defendants filed a reply, *see* Dkt. No. 54.

For the reasons explained below, the Court grants Defendants' Motion for Partial Summary Judgment [Dkt. No. 29] in its entirety.

## Background

This case concerns an alleged motor vehicle accident.

Plaintiff Bryan Russell Arnett alleges that, on December 14, 2022, he was driving on Interstate 20, in Hutchins, Texas when Defendant Larry Tyrone Fairell, II struck Arnett's car with his truck-trailer. *See* Dkt. No. 21 at 2. Fairell was purportedly an employee of Defendant C&S Delivery Services, LLC at the time of the accident. *See id.* at 3. And Defendant Corona Threats, who is Fairell's wife, allegedly

owned the tractor-trailer that Fairell was driving. *See id.*

Arnett alleges that he sustained injuries requiring medical treatment as a result of the collision. *See id.* at 4. He sued Defendants in Texas state court, and Defendants removed the lawsuit to this court on the basis of diversity jurisdiction. *See* Dkt. No. 1.

Arnett asserts negligence and gross negligence claims against Fairell. Arnett alleges that Fairell failed to keep a proper lookout; failed to maintain an adequate distance between his vehicle and plaintiff's vehicle; failed to make such application of the brakes as a person using ordinary care would have; failed to control his speed; failed to safely operate his truck-trailer; failed to take proper evasive maneuvers efficient to avoid the collision; and changed lanes when unsafe. *See* Dkt. No. 21 at 5-6.

Arnett contends that C&S Delivery Services, LLC ("C&S") and Corona Threats are liable for Fairell's negligent acts under the theory of respondeat superior. *See id.* at 8. He alleges that, at the time of the accident, Fairell was acting within the scope of his employment and under the direction and control of C&S and Threats. *See id.*

Arnett also sues C&S and Threats for: negligent entrustment; negligent maintenance; negligent hiring, training, supervision, and retention; and gross negligence based on the foregoing. *See id.* at 6-11.

Arnett seeks monetary relief for past and future medical expenses, physical pain and suffering, mental anguish, physical impairment, and loss of past earnings

and future earning capacity. *See id.* at 12-13.

Defendants now move for summary judgment on all of Arnett's claims except his claims for negligence against Fairell and against C&S for Fairell's negligent acts under the theory of respondeat superior. *See* Dkt. No. 29.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*,

140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

"[W]hen the moving party has carried its burden under [Federal Rule of Civil Procedure] 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another

party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving

party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*,780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Objections to Plaintiff's Summary Judgment Evidence

### A.  Objections to Documentary Evidence

Defendants object to Plaintiff's exhibits D (Criminal Record) [Dkt. No. 50-3], G (conviction record) [Dkt. No. 50-6], and I (photographs) [Dkt. No. 50-7] on the grounds that they are not authenticated under Federal Rule of Evidence 901. *See* Dkt. No. 55 at 4.

But "the exhibits do not need to be authenticated at the summary judgment stage of the proceedings." *Pem-Air Turbine Engine Servs. LLC v. Gupta*, No. 3:21-CV-180-L-BN, 2024 WL 1317798, at *3 (N.D. Tex. Mar. 27, 2024).

"'At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.'" *Tompkins v. Amarillo College*, No. 2:19-cv-27-Z-BR, 2021 WL 9880852, at *1 (N.D. Tex. Feb. 5, 2021) (quoting *Maurer v. Indep. Town*, 870 F.3d 530, 534 (5th Cir. 2017)). It only need be "presented in a form that would be admissible in evidence." *Id.* (quoting *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016)) (quoting Fed. R. Civ. P. 56(c)(2)).

"This flexibility allows the court to consider the evidence that would likely be admitted at trial – as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant–without imposing on parties the time and expense it takes to authenticate everything in the record." *Id.* (quoting *Maurer*, 870 F.3d at 384).

Defendants do not assert that any of these documents cannot be presented in a form that would be admissible at trial – instead, Defendants only assert that they

have not yet been authenticated at the summary judgment stage.

And, so, Defendants' authenticity objections are overruled.

## B. <u>Objections to Affidavit</u>

Federal Rule of Civil Procedure 56(c) requires that an affidavit or declaration used to support or oppose a motion for summary judgment (1) be made on personal knowledge, (2) set forth facts that would be admissible in evidence, and (3) show affirmatively that the affiant is competent to testify to the matters stated. *See* Fed. R. Civ. P. 56(c)(4).

Declarations asserting personal knowledge must include enough factual support to show that the declarant possesses that knowledge. *See Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2017). A statement is not within a declarant's personal knowledge if the statement is based on information and belief. *See Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 673 (W.D. Tex. 2015).

Conclusory declarations cannot create fact issues to defeat a summary judgment. *See First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009); *see also Amie*, 253 F. App'x at 451 (summary assertions or conclusory allegations in a declaration are simply not enough proof to raise a genuine issue of material fact). "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir.

2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.").

Defendants object to the affidavit and report of Plaintiff's expert, David Hedgpeth [Dkt. No. 50-12] insofar as he "purports to opine on the contributing factors of the collision at issue, what actually happened in the collision at issue, or whether Plaintiff or Defendant Larry Fairell caused the collision at issue or were negligent in connection therewith." Dkt. No. 55 at 4.

Defendants specifically point to testimony, in which Mr. Hedgpeth opined that he

> concur[s] with the investigating officer's opinion, Hutchins Police Officer Kristofer Gaffney, ID #303, regarding the contributing factor(s) in this accident. The Texas Peace Officer's Crash Report – Code Sheet indicates Mr. Fairell, Driver of Vehicle #1, Changed Lanes When Unsafe (#4) and Driver Inattention (#20), Mr. Fairell failed to drive as a professional driver making these unsafe movements when driving the vehicle entrusted to him by C&S Delivery Services, LLC. He contributed to the factors leading up to the sequences of events of the collision and displaying negligence.
>  . . . .
> No file evidence has been presented to indicate negligence on behalf Mr. Bryan Russell Arnett, driver of vehicle #3 in this accident. I observed no contributing factors on Mr. Arnett leading up to the causation of the accident.

Dkt. No. 50-12 at 4.

Defendants contend that Mr. Hedgpeth's testimony is inadmissible as lacking foundation and conclusory because "[he] did not witness the collision at issue and has no personal knowledge of what happened … is not a reconstruction expert and did not inspect the site or the vehicles at issue." Dkt. No. 55 at 4-5. And, so, they contend that Mr. Hedgpeth is not qualified under Federal Rule of Evidence 702 to testify

concerning the specific events of the actual collision or to provide legal opinions on whether Fairell's actions constituted negligence. *See id.* at 5.

But the Court's review of Mr. Hedgpeth's affidavit – which addresses his qualifications, methodologies, and documents reviewed – are sufficient to show that his testimony was based on personal knowledge and not conclusory. *See generally* Dkt. No. 50-12.

And, so, Defendants' partial objection to Mr. Hedgpeth's affidavit and report as a part of the summary judgment record is overruled.

## Analysis

### I.   <u>Subject Matter Jurisdiction</u>

Diversity jurisdiction under 28 U.S.C. § 1332 is the only basis for federal subject matter jurisdiction that Defendants invoke in their Notice of Removal. *See* Dkt. No. 1.

The United States Court of Appeals for the Fifth Circuit recently explained that, in a diversity case under 28 U.S.C. § 1332,

- "[a]t the pleading stage, the party invoking the federal court's jurisdiction must allege the citizenship of each" party;

- "[a]t the summary judgment stage," the party invoking the federal court's jurisdiction "must provide evidence sufficient to support a jury finding of the citizenship of" each party; and,

- "at trial," the party invoking the federal court's jurisdiction "must prove the citizenship of each" party.

*Megalomedia Inc. v. Philadelphia Indem. Ins. Co.*, 115 F.4th 657, 659 (5th Cir. 2024) (published order); *accord J.A. Masters Invs. v. Beltramini*, 117 F.4th 321, 323 (5th Cir. 2024) (published order); *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 315 n.* (5th Cir. 2019).

The Fifth Circuit has also long held that district courts can and should do their own fact-finding and final determinations on their subject-matter jurisdiction over a case at any stage, including before summary judgment. *See Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010) ("Judges have the power to resolve certain threshold issues without the participation of a jury before the adjudication of a case on its merits. For example, when subject matter jurisdiction over a case turns on disputed facts, judges have the power to resolve these disputes in assuring themselves of their courts' jurisdiction."); *Edwards v. Associated Press*, 512 F.2d 258, 262 n.8 (5th Cir. 1975) ("Consideration of affidavits and, where necessary, the taking of testimony are appropriate means for resolving jurisdictional disputes."). And, when district courts determine "the existence of subject matter jurisdiction in fact," the courts do not proceed under the strictures, burdens, or standards that apply to motions under Federal Rules of Procedure 12(b)(6) and 56, such as attaching "presumptive truthfulness … to [a] plaintiff's [or removing defendant's] allegations." *Chatham Condo. Associations v. Century Vill., Inc.*, 597 F.2d 1002, 1012 (5th Cir. 1979) (cleaned up). A district court is instead "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case"; "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims"; and the party invoking the federal court's jurisdiction "will have the burden of proof that jurisdiction does in fact exist." *Id.* (cleaned up).

And, so, to comply with this governing law, Defendants must provide evidence sufficient to support a jury finding of the citizenship of each party or for the Court to evaluate and determine on its own the citizenship of each party.

For natural persons, Section 1332 citizenship is determined by domicile, which requires residency plus an intent to make the place of residency one's permanent home. *See SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023).

And, for purposes of diversity jurisdiction, a limited liability company's citizenship "is determined by the citizenship of all of its members." *Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, LLC*, 757 F.3d 481, 483 (5th Cir. 2014); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). "To establish diversity jurisdiction in a suit by or against an LLC, a party 'must specifically allege the citizenship of every member of every LLC.'" *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 408 (5th Cir. 2023) (quoting *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017)). And "the appropriate tests for citizenship involve tracing entities' citizenship down the various organizational layers where necessary." *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 Fed. Appx. 765, 768 (5th Cir. 2015).

Defendants allege that Bryan Russell Arnett is a citizen of Texas. *See* Dkt. No. 30 at 5.

To support plaintiff's citizenship allegations, Defendants provide an excerpt from Arnett's deposition indicating that he has resided in Texas for approximately the last four years and that he lives at that residence with his wife and son. *See* Dkt. No. 31-1 at 39-40; *see also Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (explaining that "[r]esidence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile" (cleaned up)).

Defendants allege that Larry Tyrone Fairell, II "now and was at the time of filing of this action an individual residing in and a citizen of the state of Alabama." Dkt. No. 30 at 4.

To support Fairell's citizenship allegations, Defendants provide an excerpt from Fairell's deposition indicating that he currently resides in Alabama and lived at that same address in December 2022. *See* Dkt. No. 31-1 at 8

Defendants allege that Corona Threats "now and was at the time of filing of this action an individual residing in and a citizen of the state of Alabama." Dkt. No. 30 at 4.

To support Threats's citizenship allegations, Defendants provide an excerpt from Threats's deposition indicating that she is married to Fairell and that they live together at the Alabama residence. *See* Dkt. No. 31-1 at 23, 27.

Defendants allege that C&S Delivery Services, LLC is a limited liability company and that its sole members are Fairell and Threats, who are both Alabama citizens, and, so, it is also a citizen of Alabama. *See* Dkt. No. 30 at 4-5.

To support C&S's citizenship allegations, Defendants provide excerpts from Fairell's and Threats's depositions, in which Fairell and Threats confirmed that they managed and operated the company together. *See* Dkt. No. 31-1 at 10-11, 23-26.

Based on the evidence provided, the Court finds that Plaintiff Bryan Russell Arnett is a citizen of Texas, and Defendants Larry Tyrone Fairell, II, Corona Threats, and C&S Delivery Services, LLC are citizens of Alabama.

And, so, the Court finds that Defendants have satisfied their burden of proof regarding the citizenship of the parties in this action.

## II.    **Negligent Entrustment**

Defendants contend that Arnett lacks the necessary evidence supporting his negligent entrustment claim. *See* Dkt. No. 30 at 8.

To establish liability under a negligent entrustment theory, a plaintiff must show: (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) at the time of entrustment, the owner knew or should have known that the driver was unlicensed, incompetent, or reckless; (4) the driver was negligent on the occasion in question; and (5) the driver's negligence proximately caused the accident. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007).

Defendants contend that Arnett cannot satisfy the second element – that Fairell was unlicensed, incompetent, or reckless. *See* Dkt. No. 30 at 8.

The undisputed summary judgment evidence shows that Fairell has had a valid commercial driver's license issued by the State of Alabama since June 2020. *See* Dkt. No. 51-2. "The possession of a valid, unrestricted driver's license is evidence of a

driver's competency absent any evidence to the contrary." *Batte v. Hendricks*, 137 S.W.3d 790, 791 (Tex. App. — Dallas 2004, pet denied)

In support of Arnett's assertion that Fairell was an incompetent and/or reckless driver, he points to Fairell's "problematic driving history," *see* Dkt. No. 50 at 10, and "lengthy criminal background," *see id.* at 17, which includes the following:

- Previous convictions for firearm and drug-related crimes, *see* Dkt. No. 50-3 at 11, 30;

- In 2007, Fairell was arrested for driving with a suspended driver's license, *see id.* at 32;

- In or around 2009, Fairell was convicted of and imprisoned in Florida for crimes including reckless driving, fleeing/eluding from police, and failure to yield the right of way, *see* Dkt. No. 50-6;

- In 2011, Fairell did not have a driver's license, *see* Dkt. No. 50-1 at 28-29;

- In 2016, Fairell was arrested for and charged with grand theft, *see* Dkt. No. 50-3 at 35; and

- In 2020, Fairell's Florida driver's license was suspended, *see* Dkt. No. 51-1 at 2.

And, while Arnett does not specifically address it, Fairell was cited for failure to obey a traffic instruction sign in Florida in December 2019. *See id.* at 3.

But the "lengthy criminal background" and "problematic driving history" Arnett describes, in conjunction with the December 2019 traffic ticket, are

insufficient to establish incompetence or recklessness under Texas law.

"Courts consider the number and remoteness of the violations in assessing whether the record is sufficient to establish recklessness or incompetence." *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 653 (S.D. Tex. 2016). And "[p]roof of one ticket – even if recent – is 'grossly inadequate' to make this showing." *Id.* (quoting *Mayer v. Johnson*, 148 S.W.2d 454 (Tex. Civ. App. — Amarillo 1941, writ dism'd).

"Even serious tickets such as DUIs are not indicative of a driver's recklessness or incompetence if they are remote." *Id.* (citing *Batte*, 137 S.W.3d at 791 (16-year-old DUI too remote to create fact issue on recklessness or incompetence)); *see also Avalos v. Brown Auto. Ctr., Inc.*, 63 S.W.3d 42, 49 (Tex. App. – San Antonio 2001, no pet.) (seven-year-old DUI too remote to create fact issue on recklessness or incompetence); *Beall v. Cooke*, 01–00–00150–CV, 2001 WL 699915, at *4 (Tex. App. – Houston [1st Dist.] June 21, 2001, no pet.) (five-year old DUI too remote to create fact issue on recklessness or incompetence)

And, so, "Texas courts have set the bar high." *Phillips*, 189 F. Supp. 3d at 653. And "when courts do find that the evidence is sufficient to establish recklessness or incompetence, the record contains convictions and violations that are related to the accident, frequent, and recent." *Id.* (citing *Broesche v. Bullock*, 427 S.W.2d 89, 93 (Tex. Civ. App. – Houston [14th Dist.] 1968, writ ref'd n.r.e.) (seven moving violations, and reprimand letter from the Department of Public Safety in the three-year period prior to the accident); *Pesina v. Hudson*, 132 S.W.3d 133, 139 (Tex. App. – Amarillo 2004,

no pet.) (three incidents of driving while intoxicated or under the influence of drugs, two collisions, and one speeding ticket in the two-year period prior to the accident)); *cf. Goodyear Tire*, 236 S.W.3d at 758 (holding that a driving record with citations for driving without liability insurance, exceeding the speed limit, and rear-ending a vehicle at a stoplight was insufficient to raise a genuine issue of material fact as to incompetence or recklessness); *Phillips* 189 F. Supp. 3d at 653 ("A record with two moving violations or accidents within a two-year period prior to the accident is also insufficient;" cleaned up).

Here, Arnett has not met the "high bar" that Texas has set.

Aside from Fairell's previous arrests/convictions and driving infractions – the majority of which occurred over a decade before the accident – Arnett provides no other evidence of instances of collisions, infractions, or reckless driving except the December 2019 traffic ticket, which occurred approximately three years prior. Fairell's arrest for grand theft, which does not appear to be driving-related, took place about six years before, and, based on the summary judgment record, Fairell's only accident while driving for C&S was his collision with Arnett.

Having considered the foregoing, the Court concludes that under Texas law, Fairell's criminal record (with his most recent instance of criminal activity occurring about six years before the accident) and December 2019 traffic ticket – are too remote to establish recklessness or incompetence.

And, so, there is insufficient evidence in the record to create a genuine issue of material fact as to whether Fairell was an incompetent or reckless driver at the time

Threats or C&S entrusted him with the truck. And Defendants are entitled to judgment as a matter of law on Arnett's negligent entrustment claim.

### III.  Negligence Maintenance

Defendants contend that Arnett lacks the necessary evidence supporting his claim for negligent maintenance. *See* Dkt. No. 30 at 8.

To prevail on claims for negligent inspection, repair, and maintenance, a plaintiff must establish the elements of a standard negligence claim: duty, breach, causation, and damages. And, so, in an automobile collision case, a plaintiff must prove the defendant had a duty to maintain, repair or inspect the vehicle involved in the accident, it breached the duty and its failure to maintain, repair or inspect the vehicle resulted in or contributed to the accident. *See Perez v. Boecken*, No. SA-19-CV-000375-XR, 2020 WL 3452990, at *3 (W.D. Tex. June 23, 2020).

In their partial summary judgment motion, Defendants assert that Arnett has not provided evidence showing that a lapse in the maintenance of Defendants' vehicle caused the collision at issue or Arnett's alleged injuries. *See* Dkt. No. 30 at 8.

But, as Defendant point out in their reply, *see* Dkt. No. 55 at 5, Arnett fails to address Defendants' argument concerning negligent maintenance in his response, *see generally* Dkt. No. 50.

When a non-moving party files a response to a motion for summary judgment and fails to include an argument about a claim, defense, or theory that the motion seeks to have the Court dismiss with prejudice, the Court may determine that the nonmoving party has abandoned the unaddressed claim, defense, or

theory. *See Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir. 2022); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163-64 (5th Cir. 1983); *accord Maynard v. PayPal, Inc.*, No. 3:18-cv-259-D, 2019 WL 3552432, at *3 (N.D. Tex. Aug. 5, 2019) ("A party may abandon its claim when it fails to pursue the claim beyond the complaint. *See, e.g.*, *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163-64 (5th Cir. 1983).").

And, so, the Court concludes that Arnett abandoned his negligent maintenance claim and dismisses it with prejudice.

## IV.    Respondeat Superior and Negligent Hiring, Training, Supervision, and Retention Against Defendant Threats

The common-law doctrine of respondeat superior holds one person vicariously liable for the acts of another based solely on the relationship between them. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130-31 (Tex. 2018). Under the respondeat superior doctrine, "an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007).

"Proving an employer's vicarious liability for a worker's negligent driving ... involves a two-step process." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 138 (Tex. 2018). The plaintiff has the burden of showing, at the time of the alleged conduct, that the worker (1) was an employee and (2) was acting within the course

and scope of his employment. *See id.*

And, so, to prove his claim against Threats under the doctrine of respondeat superior, Arnett must produce evidence not only of an employer-employee relationship between Fairell and Threats but also that Fairell was acting in the course and scope of that employment relationship when the collision occurred.

To prevail on a claim for negligent hiring or supervision, the plaintiff must "establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Noviello v. Holloway Funding Grp.*, No. 3:22-cv-52-BN, 2023 WL 128395, at *8 (N.D. Tex. Jan. 9, 2023) (quoting *Williams v. Hous. Corp. of Greater Houston*, No. CV H-14-2309, 2016 WL 5795136, at *11 (S.D. Tex. Sept. 16, 2016)). Direct causes of action asserting negligent hiring, training, and supervision are based on the employer's own negligent conduct and not the employee's negligent conduct. *See Williams v. McCollister*, 671 F. Supp. 2d 884, 888 (S.D. Tex. 2009).

Defendants argue that Arnett cannot show that Threats – in her individual capacity – was Fairell's employer, and, so, his claim against Threats under respondeat superior fail. *See* Dkt. No. 30 at 9. And Defendants contend that Arnett's negligent hiring, retention, supervision, and training claims against Threats fail for the same reason. *See id.*

The Court agrees.

The undisputed summary judgment evidence shows that insofar as an employer-employee relationship existed, it did so between Fairell and C&S – not

Threats in her individual capacity. Fairell and Threats are admittedly the sole managers and operators of C&S. *See* Dkt. No. 31-1 at 10-11, 23-26. And Threats purportedly owns the tractor-trailer that Fairell was driving at the time of the incident. *See* Dkt. No. 21 at 3.

But neither is sufficient to impute an employer-employee relationship to Threats in her individual capacity.

And, so, Arnett's respondeat superior and negligent hiring, retention, supervision, and training claims against Threats fail as a matter of law.

## V.    Negligent Hiring, Training, Supervision, and Retention against Defendant C&S

Arnett also asserts negligent hiring, training, supervision, and retention claims against Defendant C&S.

Negligent hiring, training, retention, and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability. *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 810 (Tex. App. — Austin 1997, no writ) (cleaned up).

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540-41 (5th Cir. 2005) (citing *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,* 143 S.W.3d 794, 798 (Tex. 2004)).

An employer owes a duty to its other employees and the general public to ascertain the qualifications and competence of the employees it hires, especially

where the occupation at issue could cause hazard to others or requires skilled or experienced persons. *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App. — Fort Worth 2002, no pet.) (cleaned up). And, so, "an employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Id.* (cleaned up).

"The competence and fitness standard for negligently hiring a driver is virtually identical to the competence and reckless standard for negligent entrustment of a vehicle." *James v. Dasilva Transp., Inc.*, No. 4:19-CV-592, 2021 WL 863772, at *5 (S.D. Tex. Feb. 5, 2021) (citing *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex. Civ. App. 1979). And, so, "[a]s previously discussed in the context of negligent entrustment, for there to be factual sufficiency with respect to incompetence[,] a driver must have a recent and frequent record of citations or driving incidents." *Silvas v. Harrie*, No. 17-CV-34, 2018 WL 5733187, at *8 (W.D. Tex. Aug. 28, 2018)

Liability for negligent hiring, training, retention, or supervision is also premised on proximate cause. *See Morris*, 78 S.W.3d at 50.

A breach is the "proximate cause" of the plaintiff's harm when it is a "cause in fact" of the harm and "a reasonable prudent person should have known of the anticipated danger created by [the breach]." *Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *13 (E.D. Tex. Oct. 2, 2012); *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 774-75 (Tex. 2010). Mere conjecture, guess,

or speculation cannot establish proximate cause. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Rather, the plaintiff must prove proximate cause with evidence of probative force. *See id.* "The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred." *Id.* (internal citations omitted). But it is not enough to show cause in fact if the defendant did nothing more "than furnish a condition which made the injury possible." *Id.* "Instead, the evidence must show that the negligence was the proximate, not the remote, cause of the injuries and justify the conclusion that the injury was the natural probable result." *Katy Springs & Mfg. v. Favalora,* 476 S.W.3d 579, 590 (Tex. App. – Houston [14th Dist.] 2015, pet. denied) (citing *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 266 (Tex. App. – Houston [14th Dist.] 2000, pet. denied)).

To establish breach and proximate cause as to a negligent training claim, "a plaintiff must prove that a reasonably prudent employer would have provided training beyond that which was given and that failure to do so caused his injuries." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App. – Fort Worth 2008, no pet.); *see also Baird v. Shagdarsuren*, No. 17-cv-2000-B, 2020 WL 208815, at *10 (N.D. Tex. Jan. 14, 2020)

Defendants contend that Arnett has not provided evidence to show that C&S's failure to investigate, screen, supervise, or train Fairell proximately caused Arnett's injuries. *See* Dk. No. 30 at 10-11. And, as to Arnett's negligent training claim, Defendants assert that Arnett cannot show that "a reasonably prudent employer

would have provided training beyond that which was given and that such failure to do so by C&S caused his injuries." *Id.* at 11.

Arnett states that "[t]he analysis used to demonstrate that C&S negligently entrusted the vehicle used in this collision is similar to the analysis used in regards to the negligent hiring claim." Dkt. No. 50 at 25. Courts have also explained that the analysis of negligent hiring and negligent entrustment claims mirror one another. *See Phillips*, 189 F. Supp. 3d at 651 (citing *Mireles v. Ashley*, 201 S.W.3d 779, 783 n. 4 (Tex. App. – Amarillo 2006, no pet.)).

And, so, Arnett's negligent hiring, training, retention, and supervision claims also appear to be based on Fairell's "lengthy criminal background" and "problematic driving history" described above. *See* Dkt. No. 50 at 25-26.

But Arnett's argument is belied by his own assertion that "the majority of the convictions on Defendant Fairell's criminal history occurred before he was ever hired to work as a driver" for C&S, which appeared to be in or around 2014 when C&S was formed. *Id.* at 26.

In Texas, a plaintiff must show a "nexus" to the accident in question, which is "difficult" to do. *Phillips*, 189 F. Supp. 3d at 651. And, "[t]o demonstrate a fact issue as to whether an employer exercised reasonable care in[, for example,] qualifying a driver based on his record, Texas courts appear to require that the record contain recent and/or frequent violations that are violations related to the accident at issue. *Id.* (citing *Morris*, 78 S.W.3d at 51-52 (one DUI conviction 16 years prior to the accident, one conviction for drug possession 12 years prior, one DUI charge two years

prior, and one non-injury accident the same year sufficient to raise fact issue in case in which the driver was intoxicated when the accident occurred)).

Insofar as Arnett contends that Fairell's "lengthy criminal background" and "problematic driving history," no less than three years before C&S was founded, provides a basis for imposing liability on C&S for hiring him, the Court finds that Fairell's record lacks the relevant nexus to the accident at issue. The accident occurred approximately eight years after Fairell was hired in 2014, and, so, Fairell's arrests/convictions and driving infractions from 2011 or earlier are too remote to give rise to the requisite foreseeability for showing proximate cause.

And, as discussed above in the Court's analysis of recklessness or incompetence as to Arnett's negligent entrustment claim, there is no other evidence of instances of collisions, infractions, or reckless driving by Fairell except his December 2019 traffic ticket. Fairell's 2016 arrest for grand theft also appeared to be non-driving related. Considering the foregoing and the summary judgment record, Fairell's only accident between 2014 and 2022 while driving for C&S was the collision with Arnett.

The Court finds that, even if C&S was aware or should have been aware of Fairell's prior arrests/convictions and driving infractions, Arnett has not provided evidence to support a finding of proximate causation here.

Arnett's negligent training and supervision claims fail for a similar reason: because he cannot show that C&S's failure to provide training or to supervise Fairell – who managed C&S with Threats and operated as a delivery driver for approximately eight years without incident – caused his injuries.

And, so, C&S is entitled to judgment as a matter of law on Arnett's negligent hiring, retention, supervision, and training claims.

## VI.  Gross Negligence

Gross negligence includes two elements:

> (1) viewed objectively from the actors standpoint, the act or omission must involve an extreme degree of risk, considering the probability and the magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex. 1994); *see also* TEX. CIV. PRAC. & REM. CODE §§ 41.001(11).

The test for gross negligence contains an objective and subjective prong. *See Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 326 (Tex. 1993). "Evidence of simple negligence is not enough to prove either element of gross negligence." *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex. 1998). An act or omission that is "merely thoughtless, careless or not inordinately risky" does not satisfy the elements of gross negligence. *Moriel,* 879 S.W.2d at 22.

Under the first element, "'extreme risk' is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex. 1998). This threshold is "significantly higher than the objective 'reasonable person' test for negligence."

To meet the second element, the defendant must have known about "the peril, but its acts or omissions demonstrated that it did not care." *Ellender,* 968 S.W.2d at 921.

A. Fairell

Arnett alleges that Fairell's acts or omissions involved an extreme degree of risk for which he had awareness. *See* Dkt. No. 21 at 6.

Arnett's summary judgment response brief appears to only argue gross negligence on behalf of Defendants C&S and Threats – not Fairell. *See* generally Dkt. No. 50 at 32-37.

But, insofar as Arnett contends that Fairell's negligent operation of the truck-trailer constitutes gross negligence under Texas law, the Court disagrees.

Texas courts have generally found that whether a driver is operating a car or truck, acts that support a finding of ordinary negligence will not support a finding of gross negligence. *See e.g.*, *McCarty v. Moss*, 225 S.W.2d 883, 886 (Tex. Civ. App. – Austin 1949, writ ref'd) (mere fact that an automobile was operated at an excessive rate of speed does not constitute gross negligence); *Rogers v. Blake*, 150 Tex. 373, 240 S.W.2d 1001, 1004 (1951) (conscious failure to stop at a stop sign, standing alone, does not constitute gross negligence); *Hylander v. Groendyke Transp., Inc.*, 732 S.W.2d 692, 695 (Tex. App. – Corpus Christi 1987, writ ref'd n.r.e.) (truck driver's decision to continue driving with a blown-out tire at night insufficient to constitute gross negligence).

And, so, a driver's actions must be "considerably more extreme, often involving

multiple conscious acts or omissions, to support liability." *Phillips*, 189 F. Supp. 3d at 656 (citing *Perez Librado v. M.S. Carriers, Inc.*, No. 3:02-cv-2095-D, 2004 WL 1490304, at *3 (N.D. Tex. June 30, 2004) (denying motion for summary judgment on gross negligence claim because truck driver drove 56-58 miles per hour in an area with controlled intersections, intentionally failed to observe the roadway for 14-20 seconds, and ran a stop sign as a result)).

Here, Arnett has neither provided evidence that Fairell engaged in activity meeting the higher threshold required to prove an act or omission, when viewed objectively, involved an extreme degree of risk nor that he had actual, subjective awareness of any risk but proceeded with conscious indifference to the rights, safety, or welfare to others. *See* Dkt. No. 21 at 7.

And, so, Fairell is entitled to summary judgment on Arnett's gross negligence claim against him.

### B. C&S and Threats

Arnett alleges that C&S and Threats's conduct in connection with the incident involved an extreme degree of risk, "considering the probability and magnitude of the potential harm to [Arnett] and to other users of the public roadways," for which they had awareness. *Id.* at 11.

Because the Court finds that Arnett's gross negligence claim against Fairell fails, C&S cannot be liable for gross negligence under the theory of respondeat superior. And, so, the Court turns to Arnett's gross negligence claims against C&S and Threats premised on his negligent entrustment, hiring, training, supervision,

and retention claims.

But, in Texas, a defendant "cannot be grossly negligent without being negligent." *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App. – Austin 1990, writ denied); *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App. – Texarkana 2008, no pet.)

As discussed above, there is insufficient evidence to sustain Arnett's allegations of negligent entrustment, hiring, training, supervision, and retention against C&S and Threats.

And, so, Arnett's gross negligence claims fail because there is insufficient evidence to substantiate his claims as the threshold for gross negligence is significantly higher than that of negligence. *See Wal-Mart Stores,* 868 S.W.2d at 327 (evidence of simple negligence does not suffice to prove the elements of gross negligence). And Defendants C&S and Threats are entitled to summary judgment on Arnett's gross negligence claims against them.

## Conclusion

The Court grants Defendants' Motion for Partial Summary Judgment [Dkt. No. 29] in its entirety and dismisses with prejudice all of Arnett's claims except his claim against Fairell for negligence and his claim against C&S under the theory of respondeat superior.

SO ORDERED.

DATED: August 20, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE