IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYAN RUSSELL ARNETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:24-cv-1643-BN |
| | § | |
| C&S DELIVERY SERVICES LLC, | § | |
| CORONA THREATS, and LARRY | § | |
| TYRONE FAIRELL, II, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Defendants C&S Delivery Services, LLC, Corona Threats, and Larry Tyrone Fairell, II have filed a Motion to Partially Strike Expert. *See* Dkt. No. 61.

Plaintiff Bryan Russell Arnett filed a response, *see* Dkt. No. 63, and Defendants filed a reply, *see* Dkt. No. 66.

For the reasons explained below, the Court denies Defendants' motion [Dkt. No. 61].

### Legal Standards

### I.    Federal Rule of Evidence 702

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2023 WL 348963, at \*6 (N.D. Tex. Jan. 20, 2023) (quoting *Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at \*1 (N.D. Tex. Mar. 1, 2022) (cleaned up)).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at \*1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to

testify by virtue of his knowledge, skill, experience, training or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at \*5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe v. United States*, 516 F. Supp. 3d 660, 679-80 (W.D. Tex. Feb. 2, 2021) (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at \*18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Aircraft Holding*, 2022 WL 3019795, at \*5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at \*4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at \*6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). "Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at \*1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the *ipse dixit* [– that is, an unproven and

unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 806-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and base his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.' " *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up). "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are (1) whether the

expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022 WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up). "The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). "The Fifth Circuit has recognized that [t]he *Daubert* reliability analysis applies to, among other things, 'the facts underlying the expert's opinion,' " and "an opinion based on insufficient, erroneous information, fails the reliability standard." *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up). "Even when a court rules that an expert's testimony is reliable, this does not necessarily mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

The Court cannot accept arguments that "urge[ ] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context

of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). "But the notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up).

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to

the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up). Generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

## II.    **Federal Rules of Civil Procedure 26 and 37**

Federal Rule of Civil Procedure 26(a)(2) governs disclosure of expert testimony. In addition to initial disclosures, a party must disclose to the other parties the identity of any witness that it may use at trial to present expert evidence. *See* Fed. R. Civ. P. 26(a)(2)(A).

If the witness is one retained or specially employed to provide exert testimony in the case, the report must contain, among other things, "a complete statement of all opinions the witness will express and basis and reasons for them" and "the facts or

data considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B).

As to allegedly untimely supplemental expert reports, Federal Rule of Civil Procedure 26(e)(1) provides that "[a] party who has made a disclosure under Rule 26(a) ... must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-cv-764-X, 2023 WL 348963 (N.D. Tex. Jan. 20, 2023).

"[T]he line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction ... depends on the facts of the case." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *2 (N.D. Tex. July 29, 2022) (cleaned up).

But "[c]ourts routinely reject untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert disclosures and disclosure 'departs from [or] expands upon [the] original report in [any] material respects." *Holcombe v. United States*, 516 F. Supp. 3d 660, 670 (W.D. Tex. 2021) (cleaned up). "The purpose of supplementary disclosures is just that – to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Aircraft Holding*, 2022 WL 3019795, at *2 (cleaned up). "Thus [w]hen the analysis and opinions in the second report [are] largely new rather than supplementary, they cannot qualify as a supplemental expert

-11-

report under Rule 26(e)." *Id.* (cleaned up).

And Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

"In evaluating whether a violation of Rule 26 is harmless, the court examines four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. The court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Fuller v. CIG Fin., LLC*, No. 3:22-cv-1289-D, 2023 WL 8482889, at *2-*3 (N.D. Tex. Dec. 7, 2023) (cleaned up).

The disclosing party bears the burden of proving the failure to timely disclose was substantially justified or harmless. *See Lopez v. Fun Eats and Drinks, LLC*, No. 3:18-cv-1091-X, 2021 WL 3502361, at *4 (N.D. Tex. July 16, 2021); *accord Coleman v. Chevron Phillips Chem. Co. LP*, No. CV H-23-350, 2024 WL 460248, at *9 (S.D. Tex. Feb. 6, 2024); *Fuller*, 2023 WL 8482889, at *3.

### Analysis

The parties and the Court are familiar with the background of this case, and, so, the Court will not repeat it here. *See* Dkt. No. 68.

Defendants ask the Court to exclude the opinions and testimony of Arnett's

retained transportation safety expert, David Hedgpeth, contained in his supplemental report. *See* Dkt. No. 61.

The Court modified its Initial Scheduling Order [Dkt. No. 11] to extend Plaintiff Bryan Russell Arnett's deadline for designating expert witnesses to March 24, 2025, and the discovery deadline to April 26, 2025. *See* Dkt. No. 47.

Arnett designated Mr. Hedgpeth, of Hill Country Transportation Resources, LLC, in his First Supplemental Expert Designations on March 24, 2025. *See* Dkt. No. 49. The designation states that Mr. Hedgpeth "will testify about transportation safety, regulatory compliance, fleet management, commercial motor vehicle accident investigation, and industry standards of care." *Id.* at 9.

Mr. Hedgpeth also submitted an expert report. *See* Dkt. No. 49-2.

The relevant portions of Mr. Hedgpeth's opinions are summarized as follows:

Regulatory Compliance: Mr. Hedgpeth will discuss the lack of compliance by C&S Delivery Services, LLC with federal interstate trucking regulations and industry standards. He will highlight the absence of proper documentation, training programs, and safety measures within the company.

Safety and Prevention: He will express that C&S Delivery Services, LLC did not maintain proper records for vehicle inspections and repairs, relied on informal methods for ensuring vehicle safety, and lacked a structured accident investigation process.

Dkt. No. 49 at 10.

On May 6, 2025, Arnett served his Eleventh Supplemental Rule 26 Disclosures, which included Mr. Hedgpeth's supplemental report. *See* Dkt. No. 62-1 at 47-52.

The parties do not dispute that Arnett's original designation of Mr. Hedgpeth was timely. *See* Dkt. No. 62 at 11 (stating that "Plaintiff timely designated Mr.

-13-

Hedgpeth and served a Report from him on March 24, 2025).

But Defendants take issue with the service of Mr. Hedgpeth's supplemental report, which they assert "addresses new topics and offers new opinions not addressed in Mr. Hedgpeth's original report not disclosed in Plaintiff's Designations." *Id.*

And, so, Defendants contend that Mr. Hedgpeth's supplemental report should be stricken because it is untimely and fails to comply with Rule 26's disclosure requirements and because the opinions contained in it are unreliable and, consequently, inadmissible under Rule 702 and *Daubert*. *See* Dkt. No. 62 at 8.

The Court addresses Defendants' arguments in turn.

Defendants argue that Mr. Hedgpeth's supplemental report is untimely because it contains "new" opinions about whether speeding was a contributing factor to the incident at issue, which were not contained in his original report. *See id.* at 11-12. Specifically, Defendants state that Mr. Hedgpeth's supplemental report "attempts to calculate and speculate upon alleged prior incidents of possible speeding by Mr. Fairell." *Id.* at 12 (citing Dkt. No. 62-1 at 49-52).

Arnett contends that Mr. Hedgpeth's supplemental report is timely under Rule 26(e) because it "does not introduce new opinions but elaborates on issues already addressed in the original report." Dkt. No. 64 at 6. And Arnett disagrees that the supplemental report is about "speeding." *See id.* at 7-9.

Arnett states that original report analyzed compliance with Federal Motor Carrier Safety Regulations ("FMCSR") and, specifically, section 395.8(2)(i), which requires drivers to record their duty status. *See id.*; *see also* Dkt. No. 62-1 at 42. And

the supplemental report "builds on this" by analyzing newly produced bills of lading, which "provide additional data regarding the driving hours and mileage of Defendant Fairell [and] directly relate to the original opinion about FMCSR compliance and safety concerns." Dkt No. 64 at 6.

Arnett adds that the original report "highlighted the lack of proper documentation and adherence to FMCSR standards," noting the "absence of records of duty status and other safety measures." *Id.* at 7; *see also* Dkt. No. 62-1 at 44 (explaining in the original report that there is no evidence or documentation to show compliance with federal safety regulations, which is important to safety and accident prevention). And Mr. Hedgpeth's analysis in his supplemental report – which calculates the total miles driven and driving hours over a 37-day period – "further supports the original opinion that Defendant Fairell likely violated FMCSR standards by driving excessive hours without proper documentation." Dkt No. 64 at 7.

And, so, Arnett contends that the supplemental report bolsters Mr. Hedgpeth's original conclusions about FMCSR compliance and safety concerns but does not exceed the scope of his original report. *See id.* at 8.

Based on its review of Mr. Hedgpeth's original and supplemental reports, the Court agrees with Arnett.

Insofar as Defendants contend that the supplemental report is about "speeding," the Court recognizes that Mr. Hedgpeth calculates average speed by performing basic arithmetic and dividing distance over time. *See* Dkt. No. 62-1 at 50.

But Mr. Hedgpeth admits that this calculation is an "estimate" and that he cannot "come to an accurate conclusion as to speed [] without the proper documentation." *Id.*

And, so, Mr. Hedgpeth's supplemental report does not appear to be an attempt to include a new opinion about speeding specifically.

Rather, Mr. Hedgpeth's supplemental report serves to elaborate – more generally – on his original opinions about compliance with federal safety regulations. And, so, it does not depart from his original report in material respects.

As to timeliness, the documents (bills of lading) that formed the basis of Mr. Hedgpeth's supplemental report were purportedly produced on March 12, 2025, which was before Arnett's expert designation deadline. *See* Dkt. Nos. 64-5 & 64-6.

But Arnett states that Mr. Hedgpeth was "not able to fully analyze" these newly produced documents before issuing his original report on March 22, 2025 for various reasons. *See* Dkt. No. 64 at 15. Arnett asserts that Mr. Hedgpeth reviewed the materials and produced the supplement "as quickly as practicable," which allowed Arnett to serve the supplemental report on Defendants on May 6, 2025 – ten days after the discovery deadline. *See id.* at 16.

Considering the circumstances, the Court is persuaded that Arnett supplemented Mr. Hedgpeth's original report in a "timely manner."

For the foregoing reasons, the Court finds that Mr. Hedgpeth's supplemental report was properly disclosed under Rule 26(e). And, for essentially the same reasons, Arnett's initial designation of Mr. Hedgpeth, *see* Dkt. No. 49 at 9-10, did not violate Rule 26(a)(2).

And, insofar as Arnett's supplemental disclosure fell short of Rule 26's requirements, the Court finds that such noncompliance – on considering the four factors enumerated above and the arguments that Arnett persuasively lays out in his response, *see* Dkt. No. 64 at 16-17 – was harmless.

In support of their motion, Defendants also contend that Mr. Hedgpeth's opinions in his supplemental report are unreliable under Rule 702 and *Daubert* because they are facially speculative. *See* Dkt. No. 62 at 14; *see also* Dkt. No. 66 at 2.

Specifically, Defendants point to Mr. Hedgpeth's statements that he "is unable to come to an accurate conclusion as to speed and hours of service" and that the "information and data is inconclusive." Dkt. No. 62 at 15 (citing Dkt. No. 62-1 at 50).

But Arnett's response persuasively addresses Mr. Hedgpeth's qualifications, methodologies, materials reviewed, and summary of his opinions as it relates to his supplemental report. *See* Dkt. No. 64 at 10-13.

And, so, the Court finds that Mr. Hedgpeth's supplemental report satisfies Rule 702 and *Daubert* and that it should not be excluded on that basis.

### Conclusion

For the reasons explained above, the Court denies Defendants' Motion to Partially Strike Expert [Dkt. No. 61].

SO ORDERED.

DATED: August 20, 2025

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE